[Civ. No. 9065. Second Appellate District, Division One.—July 31, 1935.]

ALFRED W. WOTKYNS et al., Respondents, v. WM. R. STAATS CO. (a Corporation), Appellant.

O'Melveny, Tuller & Myers, B. E. Ahlport and Frank S. Balthis, Jr., for Appellant.

Haight, Trippet & Syvertson and Arthur L. Syvertson for Respondents.

YORK, J.—A judgment was rendered on a complaint which alleged that the plaintiffs became customers of defendant on or about February 1, 1930, and placed numerous orders for the purchase of corporate stocks and bonds and numerous orders for the sale of same; that all of said orders were given orally by plaintiffs and accepted orally by defendant and were executed by said defendant, as set forth in the said com-

plaint; that all of the corporate stocks and bonds so purchased by plaintiffs through the defendant as broker of plaintiffs were paid for in cash, and plaintiffs during said period of time never had any margin account with said defendant.

The complaint specifically alleged that on or about February 15, 1931, plaintiffs orally instructed and requested defendant to sell for their account 200 shares of Massachusetts Investors Trust at $35 per share and 50 shares of the corporate stock of Texas Gulf & Sulphur Co., at $52.50 per share; that the defendant orally promised and agreed at said time to sell said shares, and each of them, at said prices if the market equalled or exceeded said prices at which plaintiffs directed said shares to be sold; that the plaintiffs agreed with defendant that defendant should charge and plaintiffs should pay defendant's regular commission for the sale of said shares of stock in said transactions. It is further alleged that thereafter, during the two months following the giving of such instructions, the market prices of said shares on many days during which the New York Stock Exchange was open and during which the said defendant was engaged in the business of selling said stocks, exceeded the respective prices at which plaintiffs instructed and directed said shares to be sold, but notwithstanding said fact, defendant failed to sell said shares pursuant to its agreement, which was set forth in said complaint.

It is further alleged that during the period of time from April, 1931, immediately following the above-mentioned transactions, and down to and including the month of April, 1932, the market prices of said stocks fell far below the prices at which defendant agreed to sell the same, and during said period of time the defendant constantly advised plaintiffs not to sell, upon the representation by defendant that the losses sustained in the foregoing transactions would be retrieved in a rising market. However, on or about a year and a month after said original instructions were given, the defendant sold 25 shares of Texas Gulf & Sulphur Co. for the sum of $419.81, and some weeks later defendant sold a further 25 shares of said Texas stock for the sum of $448.50 and 200 shares of Massachusetts Investors Trust for the sum of $2,517, making the net proceeds to the plaintiffs for the sale of said stocks $3,385.31; and that by reason thereof plaintiffs allege they have suffered a loss, as a direct and proximate consequence of

defendant's failure to perform its promises, in the sum of the difference between the prices at which said stocks should have been sold, to wit: $9,625, and the prices at which said stocks were finally sold, the said difference being $6,239.69.

Defendant answered generally and filed a separate defense alleging that the plaintiffs were guilty of laches in that they could have prevented a large portion of the loss by selling the securities before they were sold, and for a third separate defense alleged that if said defendant had been instructed by plaintiffs to sell the securities on or about February 15, 1931, and if during the months of February and March, 1931, defendant failed to sell said securities at the prices required by plaintiffs, then and in that event, by the retention of said securities for a year thereafter and subsequent instructions given to the defendant to sell said securities in April, 1932, the plaintiffs waived the defendant's failure to sell said securities when and as instructed.

Defendant filed an amendment to this answer setting up a fourth separate defense which alleged estoppel and acquiescence on the part of the plaintiffs in the acts of the defendant which caused the damage to the plaintiffs.

Thereafter judgment was rendered by the jury in favor of plaintiffs, assessing damages against the defendant in the sum of $3,250. Thereafter, upon a motion for a new trial, the trial judge ordered that the judgment be modified by deducting $808.75 from the judgment, leaving a judgment standing of $2,441.25, and that upon acceptance of this reduction by the plaintiffs the defendant's motion for new trial was denied.

Defendant appeals to this court from the judgment as modified and from a denial of its motion for judgment notwithstanding the verdict.

In its opening brief appellant makes the following statement of question involved:

"Where a stockbroker fails to execute an order to sell securities in a fluctuating market, may the customer, after knowledge thereof, wait for over one year in a declining market and then hold the broker liable in damages, particularly where (a) at the time the customer acquired knowledge of the breach and subsequent thereto the greater part of the securities were in the possession of the customer; and (b) subsequent to the customer's knowledge of said breach,

the customer engaged in other transactions with the broker, used a portion of said securities as collateral for his margin account, withdrew sums therefrom, and finally closed the account by selling the securities in question, among others, and by accepting the cash balance in his favor?''

Respondents reply with a counterstatement of question involved in criticism of appellant's statement in the following words:

''The appellant has stated its view of the question of law involved. We disagree with its statement, and therefore submit the following statement of the question involved:

''Where a stock broker agrees to sell securities at a definite price but fails to do so, and where, after the customer learns of the broker's failure to perform his promise, the broker for a period of about seventy days gives assurance to the customer that he (the broker) will perform his promise, is not the customer justified in relying upon the broker's assurances of performance, and is not the measure of damage for such breach of contract the difference between the market prices of the securities at the date when the broker promised to sell them and the market prices at the time, later, when the customer, as a reasonable person should have taken affirmative steps to mitigate his own loss?''

Appellant in turn in its reply brief criticises this statement.

An examination of the evidence discloses the fact that there were a great many conversations between the parties at different times during the course of the entire transaction as to exactly what the defendant was to do, and certain promises were made by the defendant's employee in charge of the transaction dealing with what the company would do for the respondents, admissions that the company had not done as said employee stated it would do on several occasions, and later the statement that it would then be impossible to comply with the request of the respondents, for the reason that the market by that time had fallen to such an extent that the stock, which respondents had requested appellant to sell, could not be disposed of. The transactions were spread over quite a period of time, but there was sufficient evidence in the record from which the jury could render the verdict which it rendered, if it believed the evidence that was introduced in support of respondents' contentions and disbelieved the conflicting evidence. The only contention of appellant

that is not disposed of by the foregoing statement as to the sufficiency of the evidence, is the one question, as stated in appellant's reply brief, as to whether the doctrine of ratification can be applied to any wrongful conduct on the part of the broker, whether the same is an unauthorized affirmative act or an omission to act when under a duty to act, and whether or not if the doctrine of ratification is not applicable for technical reasons, the rule of waiver and equitable estoppel should apply in the instant case. This is met by sufficient evidence which justified the jury in determining that there was no ratification intended by any act that was done by either of the respondents. There was sufficient evidence to offset the question of estoppel, as raised by appellant, in that respondents at all times were requesting certain action by the appellant, which action they did not succeed in getting. There is evidence in the record which might have caused a jury to come to this conclusion, in that there was evidence that the orders to sell certain stocks were given in conjunction with an order to purchase certain other stocks. The stocks that were to be purchased, were purchased, but the stock which was to be sold to pay therefor was never sold by appellant, although defendant was repeatedly requested to make such a sale after respondents had ascertained that the orders of respondents had not been strictly complied with.

■ The objection of appellant to the use of the word "advised" in instruction number one, as listed in the appendix to appellant's opening brief, is not well taken for the reason that the entire transaction has to be read all together, and when the instruction is so read, although it may not be a model form of instruction, we can find no prejudicial error in the phraseology used. This instruction, it will be noted, required the jury in considering the law as stated in the instruction, to find whether or not the appellant through its agents or employees advised *and* persuaded the plaintiffs, and the instruction is so framed that, until the jury so found that they had been both advised *and* persuaded, the instruction had no force.

■ The objection to the instruction that there was no evidence that would justify the giving of the instruction has no merit, as there was evidence which justified its being given.

The judgment as modified by the trial court is affirmed and the order denying motion for judgment notwithstanding the verdict is affirmed.

CONREY, P. J., Concurring.— ■ I concur in the judgment. The fact that there was a contract between the plaintiffs and the defendant, and a breach of contract by the defendant, is thoroughly established by the evidence. The surviving part of the controversy relates only to the amount of damages to which the plaintiffs are entitled. The amount awarded by the jury is justified by the evidence, unless we can say that the instructions of the court to the jury permitted and presumably caused the jury to take into consideration elements of damage to which the plaintiffs were not entitled, and even so, such error in the instructions need not cause a reversal of the judgment if the consequences of the error have been neutralized by the action of the trial judge in reducing the amount of the judgment.

The court in its instructions to the jury, in connection with a statement of the issues of fact presented for decision, stated to them that ''If you find that the order was given and accepted and was not executed, then you must determine whether the plaintiffs suffered any damage as a result of such failure, and if so, how much, and . . . If you find that the order was given and accepted, and was not executed, and that the plaintiffs were damaged, then you must determine the question of whether or not the plaintiffs acted unreasonably in waiting until April of 1932 to sell said shares and whether or not, by so doing, the plaintiffs waived their right to complain about the defendant's failure to execute the order.''

Appellant makes no objection to the foregoing instruction. The exceptions taken are directed against further instructions which in further detail announced the rules of law which should guide the jury in determining whether there was any breach of contract, and in ascertaining the amount of damages, if the plaintiffs were entitled to any such compensation. These instructions were conditioned upon the finding of stated facts by the jury, if from the evidence the jury found that those facts existed. Substantially I think that the law was correctly stated by the court, although in some particulars the words chosen to express the thought of the court may not be

entirely accurate. But I cannot see wherein the jury was really misinformed upon the law of the case. And in so far as they could have affected the amount of damages awarded it is not at all probable in any event that the damages would have been less than the amount stated in the judgment. In other words, it has not been shown that in the rendition of the judgment there has been any miscarriage of justice.

Houser, J., concurred in the judgment and in both the foregoing opinions.